My next case is Daniel Bader v. United States, 2022-2203. Ms. Stone-Sutton. May it please the Court. Colonel Bader was promoted to the rank of Brigadier General after 25 years of exemplary service in the United States military. That rank was the pinnacle of his military career, a career that involved... Okay, I think we know all of that. Are you somehow suggesting that because he was allowed to have civilian employment that the regulation, the ethics regulation 2635702 didn't apply to him? No, we're not suggesting that at all. Of course, there's a whole swath of conduct that the military could have prohibited under section 2635702. The problem here is that the type of conduct that the board chose to penalize Colonel Bader for is the type of conduct that Congress specifically considered and decided to allow under section 207. Where? What? Section 207 is a very specific and detailed statute that Congress enacted and it deals precisely... You mean because it's not in 207, it can't be in regulations? It can. It's not the fact that 207 doesn't include all conduct, that anything that's not included in section 207 can't be penalized as an ethics regulation. But the board can't construe the general sweeping ethics regulation to forbid a specific type of conduct that Congress has chosen to allow. There's no suggestion here that he's being sanctioned or denied recovery because he had civilian employment. It's the way he used the civilian employment, which the Air Force found was in violation of the regulation. So it's not sanctioning him for the civilian employment, it's sanctioning for what he did in his civilian employment. I respectfully disagree with that, Your Honor. I think that if you look closely at the decisions of the board, the conduct that they punished Colonel Bader for was all conduct that boiled down to making representations to his military employer while at the same time having a civilian employer. And that's exactly what section 207 considers and allows. How does 207 allow that? I don't understand that. Well, 207 deals with the question. It sounds as though you're saying as though if he called a colonel or was a subordinate and said, I'm wearing my civilian hat, please grant this contract, that would have been permissible. Would that be permissible or not permissible? If he was acting clearly, when he was acting clearly in his role as a civilian and not invoking his rank, his authority, instructing, you know, invoking his power of his military office, then he was not using his rank. And if you look at what the board said about what it was doing on page 487 of the record, this is the Secretary of the Air Force General Counsel's opinion that the board relied on. They said, what was, how did Colonel Bader use his office? It was, quote, by maintaining a continued official presence as a government contractor or as a government officer in a workplace that he also utilized as a government contractor. It was engaging in his official capacity as a general officer with individuals with whom he also did business as a government contractor. This, according to the board, was use of office because it, quote, perpetuated his mantle of authority as a general officer. No, it's much more than that. They found he specifically helped draft the requirements for the contract. He asked people who were in a subordinate capacity to inquire about the contract award. It's much more than just being a civilian employee. But the problem that the board had with that kind of stuff, the things that you've mentioned, wasn't that he did it. They didn't say a general contractor can't propose language under other transaction authority for a statement of objectives. They didn't say a general contractor can't propose an email, propose draft language for an email. The problem they had with what he did was that the officers with whom he interacted felt a degree of intimidation. Was that because of anything? Counsel, 207C deals with a one-year cooling off period. Is that right? And am I correct in understanding that that issue was not being appealed? It was conceded? That's correct. That Colonel Bader has conceded the 207C, an inadvertent 207C violation. That itself was serious misconduct, right? I don't know if I would care how I would characterize the seriousness of misconduct given the particular facts here. But what is undisputed is that it's not a basis for affirmance in this court. It was not the sole basis of the Secretary of the Air Force's decision, and the board has never specified that that could be the basis of the decision. Even though Colonel Bader conceded that back in 2014, three years before the first Correction Board decision in this case. But to be clear, he conceded that he violated the cooling off provisions multiple years, notwithstanding that he did have specific advice that he elected to receive that told him how to calculate the cooling off period. That is true. He concedes that the advice on that point was correct and he did violate it, but that's just not the kind of the conduct that's at issue for the misuse of office violation that's at issue here. And to be frank, the regulations on that are so convoluted, it took me quite a long time to figure out exactly what he did that violated that regulation. And that's the violation of 2635-702-D, which relates to appearance. Appearance, right? That is what 702-D says. I'm not sure I heard the question. That's what he was found to have violated, right? I don't think so. I think he was found to have violated. I think both. If we're referring over to the Inspector General's report, right? That's what lays this out. That's what the Corrections Board relied on. That's ultimately what the Corporal Klein's relied on, right? I think you have to look at a couple of different places to determine what he was found to have violated here. It's a little bit convoluted. I'm asking you, we're supposed to look at the Inspector General's report, right? Because that's what the Corrections Board relied on, and then that's what was being reviewed by the Court of Federal Claims, right? So we're reviewing here the Board's decisions, which happened down the road. One of the things that they relied on was the Inspector General's report. That's certainly where it started. And the Inspector General was only authorized to investigate a violation of Appearance Provision, right? They do discuss the Appearance Provision. They don't rely on it entirely, in that they make no findings about whether he endeavored to avoid the appearance. And Section 702D requires this separate finding, which is that you have to cross-reference another section. I think it's 502, which requires a whole separate set of findings, which the Inspector General never looked at, never talked about, and never made any findings for. So the only basis, I think, that we can really look at here is Section 702A. And then again, that requires something different from what Section 207C prohibits. 207C deals with virtually any kind of representation back to the government. The Ethics Regulation requires use of your office. And 702A requires use of your office with intent. So we can't look just to the Section 207C violation and say, because he violated that, there's also a violation of the General Ethics Regulation. That requires separate and different findings. And what did the Board rely on to find those separate things? Exactly what Section 207, as a whole, permits. Permits? Yes. 207 doesn't permit things. It prohibits things. It doesn't say that something is permitted. Well, I think when Congress speaks so specifically to an overarching issue, and it chooses to leave certain things out, that we have to respect Congress's judgment on that. Congress created a situation where it authorized the President to adopt ethics regulations for federal employees, which was what the President did. And that's the regulation on which the Air Force relied. What's the matter with that? I mean, surely you can't say that because something's not in 207, it can't be in the regulations. When the ethics regulations are the exercise of authority, as you said, under a general grant authority, to kind of explore or to think about what kinds of things would be unethical. What it isn't is an authorization for the agencies to determine that they know better than Congress when a part-time member of the National Guard may make representations back to his agency. The agencies cannot interpret this general regulation to override the judgment of permitted. If you look at 207 as a whole, it addresses many different contexts in which members of the National Guard may or may not make representations back to their agency. Under Section A-1, they may not make representations ever for the duration of their life about certain topics. But Congress chose not to make that everything. They chose to only limit general representations back to your agency for the first year. When you look at the full scheme of this very detailed regulation, it is clear that Congress is allowing National Guard officers who cannot maintain full-time employment in the military, flexibility in obtaining their civilian employment. They chose to allow it. They chose to allow them to write the specifications for the contract for which they're competing. They allowed them to ask government employees to inquire about the status of their contract. Really. To be clear, when Colonel Bader wrote this, sometimes in the board's decision and in the government's brief, it sounds as though Colonel Bader wrote the scope of the contract while in his military capacity. To be clear, it is not true. He didn't sit down as Colonel Bader or then-Brigadier General Bader and write the scope of a contract. He clearly operating and undisputedly operating in his civilian capacity... It was found that he did, both in the Inspector General Report and in the letter of reprimand. I don't think that that is true. I think that if you look closely at the Inspector General Report and the board decision, the underlying finding, there are no findings that he in his Air Force role wrote this. No, no. He didn't do it in his Air Force role. He purported to do it in his civilian position, but he wrote the specifications. He wrote a draft. Again, this goes to another thing that the board chose to ignore, which is other transaction authority. That's what I wanted to ask you about. Thank you for getting to that. Where do you argue below that he had other transaction authority? This was raised repeatedly to the board below. It was one of his primary arguments to the board below, which the government does not dispute. Just give me an example. Yeah, let me find it. Appendix page 167 to 68, page 200, 201, 102 to 103. Thank you. In fact, the Inspector General recognized that he made this argument in the Inspector General Report, but rather than address the merits of the argument, the Inspector General said that the fact that he was operating under other transaction authority was, quote, not dispositive, and then moved on. How can it be dispositive when the other transaction authority itself makes clear that other provisions of law restrict people? It's not permissive. It's not permissive in the sense that, say, you can engage in self-dealing. Colonel Bader was not found to have engaged in self-dealing here or to violate any of the many complicated procurement laws and regulations that exist. It was only a finding that he violated section 2635.702. Well, the other transaction authority doesn't eliminate the regulation, right? Of course not. It doesn't eliminate the regulation, but it does allow for contractors to work collaboratively with their government counterparts to work together to create things like, specifically, a statement of objectives. And Colonel Bader submitted evidence to the board at Appendix 269, Note 6, in which the government itself has described other transaction authorities allowing exactly this kind of behavior. But instead of address Colonel Bader's argument that... What says that the other transaction authority allows this behavior? There's a report from the Congressional Research Institute discussing... What does it say that says you can do this? You can, if you have supervisory authority over the people you're writing the specifications for, that's okay? It discusses the way that a contractor can interact with the government under other transaction authority. It doesn't discuss the specific relationship with the National Guard. It's discussing this situation where he's reacting with his subordinates to write the specifications for the contract that he wants as a civilian. It's not addressing anything like that. And I suppose the board could have given the explanation that you just gave. But instead, the board chose to completely ignore this argument. And it's a significant argument that warranted its attention. My time is short. I'd like to reserve what I have left. Time isn't short. It's gone. We will give you a minute of rebuttal time. Thank you, Your Honor. Ms. Koenig, is it? It's Koenig, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court. Public service is a public trust, and Colonel Bader violated the public's trust by misusing his public office for the private gain of himself and his employer, which violated generally applicable ethics standards that are found in CFR 2635. Colonel Bader's ethics violations were based on substantial evidence, specifically findings that he directly engaged to subordinate members of his military unit to send emails on his behalf for his employer, GMRE, in order to advance progress on the contract. This is a finding in the record at Appendix page 201. At 194, Colonel Bader was also found to have assisted National Guard Bureau staff in developing and writing a statement of objectives, and then also turning around and helping to draft the response to those statement of objectives. This was found in his rubber man letter at Appendix page 205 as particularly egregious conduct. He was also found at Appendix page 190 to have sent emails suggesting a particular contract vehicle with the intent to influence the AATC, the Reserve Training Command Center, leadership into awarding business for GMRE, which led to a $1.4 million contract for GMRE to support the AATC. Can I direct you, Counsel, to page 4 of the reply brief, which says, even now the government does not identify any procurement law or regulation that Colonel Bader violated. What's your response to that? Is that argument in response to the other transaction specifically? He was not found to have violated procurement laws. He was found to have violated ethics provisions, generally applicable ethics standards, and those were applicable whether or not he violated 207, which he did and conceded, or whether or not he violated procurement laws or even the Procurement Integrity Act. It is not necessary for the board to have found a violation of some other law or regulation in order to find a violation of 5 CFR 2635. Actions which may not violate anything else can be found to be a misuse of office, which is what the IG report found here. What about the OTA argument? Was that addressed by the board or was it completely overlooked? Your Honor, I would dispute that it was completely overlooked. The IG report specifically rejected Colonel Bader's arguments on this point, and the board and its decisions upheld the findings of the IG report and specifically stated that it had reviewed the arguments made and that it found the findings of the IG to be supported. And those findings are in the record at Appendix Page 82. At Appendix Page 83 and 84, the board described the IG as being a thorough and valid investigation and upheld the findings of the IG. So while the board didn't explicitly address an argument as to other transaction authority, it is not required to under COSTA or other cases to specifically address every single argument raised by the petitioner, but it did uphold the findings of the IG, which explicitly rejected Colonel Bader's arguments as to other transaction authority. I'm sorry, I just want to make sure. You don't dispute that Colonel Bader raised the OTA arguments adequately below, do you? At the board, he raised them. He did not ever argue that the board failed to address the other transaction authority argument. So both on reconsideration, he did not make this argument. In response to any of the advisory opinions, he did not make this argument. And before the trial court, he did not make this argument. Does the argument help him if he did make it? Well, no, Your Honor. On the merits, as Your Honor stated, even if there's more flexibility when it comes to other transaction agreements, the rules as to other transaction agreements simply say that the FAR doesn't apply. This generally applicable ethics standard is not found in the FAR, and it would apply independent of any FAR provisions, which would not apply in the other transaction agreement context. As the IG found and as the Secretary of the Air Force found, it was problematic for Colonel Bader to have written the statement of objectives and then turned around and submitted a proposal or helped to write the proposal that was submitted by his private employer. This is, I will note, competitive OTA of competitive other transaction. And there may be other contexts in which the parties are collaboratively coming up with the scope of the contract or something of that sort. But especially in the context of a competitive procurement, it was certainly reasonable for the Secretary of the Air Force and for the IG to conclude that it was problematic to write the statement of objectives. There's nothing in the other transaction authority that says a government employee can work for a contractor and help write the specifications, right? Correct. I agree with Your Honor that that is not explicitly allowed by the other transaction rules that simply say that the FAR does not apply in the context of other transaction authority. But again, this generally applicable ethics rule is not found in the FAR. And so although we do think that he has waived this argument by not raising it to the trial court on the merits, we would also argue that the flexibility allowed by other transactions, the other transaction rules wouldn't mitigate his violation of 2635 in any event. Counsel for the appellate has stated that the board found a, essentially a legal per se violation by Colonel Bader working both in his role as a contractor and in his role as a reservist. But the findings of the IG which were relied on by the board go well beyond the facts of him working in a private employment role. There are a couple of specific examples which I've mentioned, directly engaging subordinate members of the military to send emails on his behalf. And as we've talked about, the writing of the statement of objectives and also writing the response. And then with the $1.4 million contract suggesting the contract vehicle, which was found to have done with the intent to influence military leadership into awarding business to GMRE. It was these specific actions which led the IG report to conclude that he had blurred his military and civilian status and used or permitted the use of his position, title, and authority in a manner intended to induce the military to provide benefit to himself and his employer. It is part of Colonel Bader's job to eliminate any confusion that might occur on behalf of the government employees he's working with. How do we, what's the authority for that? That's part of his job. Well, the general officers are held to a somewhat higher standard. And that's found in 207 is a statute that only applies to the higher ranking officers, but the 207 prohibits any communications or representations back to his employer. And as he's stated, he's conceded a violation of 207C in this case. And while we would argue it's not necessary to have found a violation of 207 in order to find a violation of 2635, the legal argument that petitioner has raised that our conduct that is permitted by 207 cannot form the basis of a 2635 violation really is irrelevant in this case because there is a conceded violation of 207. So I'm not sure I quite understand the legal argument that the petitioner or that the appellant has made here because we do have a conceded violation of 207, but that is entirely separate from the generally applicable ethics violation of 2635. Unless your honors have further questions, we would ask for the court to affirm the trial court in this case and find that the board's decision was supported by substantial evidence. Thank you, counsel. Ms. Stone-Seifer, we'll give you two minutes for rebuttal. Thank you, your honor. The government cannot point to any point in the record where the board addressed other transaction authority. They say he was required to raise it at reconsideration, but that's not correct, and the court can look to its decision in Bosley to recognize that he was not required to raise it repeatedly before the board. The government may attempt to substitute an explanation now, and they have attempted to do so to explain that other transaction authority didn't permit this kind of conduct, but the board didn't say that. The board ignored this argument entirely, as the government cannot disagree. It's a basic tenet of administrative law that the board is required to explain itself, and that the government cannot substitute a decision, a justification... Well, it's not a basic tenet of administrative law that the agency has to address every single argument that's made to it. True, but this is a very significant argument. This goes to the heart of the issue, and this court has realized that when evidence or argument goes to the heart of the issue, and clearly we all think this is important here, then the board has to address it, and it can't come in now and substitute an explanation. Why can't we read the board's references to the IGs addressing the issue as sufficient here? They don't refer to the IG addressing the issue. They don't. Everything that the government said here was that they described the Inspector General's report generally as being comprehensive and well-reasoned. They don't refer to the Inspector General's discussion of OTA. They ignore OTA entirely. But they do approve the Inspector General report and rely on it generally. Yes, but if that were the rule, then there's no point to engaging in board review. If they can just point to the initial report and we think it was well-reasoned, that, of course, can't stand up to review under the arbitrary and capricious standard. And here, there's just nothing there. The government also, to close, Colonel Bader and his family have devoted the better portions of their lives to service of this country in the military, and he deserved more than what the board provided. He deserved a well-reasoned decision that addressed each of his arguments and the important evidence in the record. The court should vacate. Thank you, counsel. The case is submitted.